HENRY A. WESS, INC. (HUTCHINSON BROS. LEATHER CO.) *v.* UNITED STATES

No. 5939.—Invoices dated Kitchener, Ontario, May 5, 1941, etc.
Certified May 7, 1941, etc.
Entered at Cincinnati, Ohio, May 15, 1941, etc.
Entry No. 749, etc.

(Decided October 20, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Samuel D. Spector*, special attorneys), for the defendant.

WALKER, Judge: These four appeals for reappraisement were consolidated for the purpose of trial and involve the valuation of certain leather used in the manufacturing of athletic goods.

The merchandise was imported from Canada in May, June, and July 1941, pursuant to an order accepted by the manufacturer herein on April 5, 1941.

The invoices describe the merchandise as "Special Willow Cowhide" in three different grades, namely, TR, D, and DX. The only item involved in these appeals is grade or quality DX, which is invoiced and entered at a price of U. S. $0.19 per sq. ft., F. O. B. Kitchener, and appraised at U. S. $0.20 per sq. ft., net, packed. Qualities TR and D were invoiced, entered and appraised at U. S. $0.20 per sq. ft.

Plaintiff contends that quality DX is of a poorer grade than qualities TR and D and that consequently it has a lower value.

Plaintiff's witness Yeager, sales manager of the consignee herein, testified that he is familiar with the involved merchandise and produced

a letter from the Canadian shipper showing acceptance of the order on April 5, 1941, which was admitted as exhibit 1. He also identified vouchers and other papers evidencing the payments of the invoice prices for these shipments. These papers were admitted in evidence as collective exhibits 2, 3, and 4.

The witness then testified that in grading the involved type of merchandise TR quality is the best selection, with hardly any blemishes; D quality is the next selection judged by the number and extent of defects; and that DX quality is what is left and is indicated by grub holes, spots, scrapes, etc. He further testified that he wouldn't buy quality DX at all if he didn't have to take some of it in order to get the rest of the leather.

The witness then produced an order placed by this importer with the same Canadian shipper on April 17, 1941, which was admitted as exhibit 8, and reads:

> 350 doz. Willow Cowhide
> #399—TR       20¢
> D              20¢
> DX             20¢
> (Not more than 15% to be DX)
> to be shipped as made between now
>     and October. Confirming tele-
> phone order.

Defendant offered a report of Treasury representative Bunting, dated May 28, 1941, relating to an investigation of the value of glove leather from John A. Lang & Sons, Ltd., of Kitchener, Ontario, Canada, the shipper herein. This report was received as exhibit A, and states:

All orders are received and filled from their plant at Kitchener, Ontario. This leather is produced after receipt of the order, not kept in stock, and generally from five to six months elapse between receipt of the order and final delivery under the same.

Defendant called Virginia T. Wess, a licensed customs broker in the office of Henry A. Wess, Inc., who identified a letter, dated August 7, 1941, received by her office from John A. Lang & Sons, Ltd., which was admitted as exhibit B, and reads in part as follows:

The leather included in our shipments of May 7 and 22, and July 19, to which you refer, were shipped against Hutchinson Brothers' order of April 5, and when this order was accepted, we felt that the price of 20¢ for the first two grades and 19¢ for the third grade, was a fair price for the entire selection. However, on April 17, when we accepted their order #5475, we felt that we should have a little higher price for the three grades, and this was arranged by increasing the price of DX to 20¢.

In the case of *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. 199, C. A. D. 192, the court considered the effect of orders placed for future delivery of merchandise not kept in stock, and held

that in such cases offers to sell for future delivery control the value of merchandise being exported on or about the date of the offer.

Accordingly, I therefore find the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, to be the proper basis for the determination of the value of the merchandise here involved, and that such value is the value returned by the appraiser.

Judgment will be rendered accordingly.